## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| FIBROCELL SCIENCE, INC., DOUGLAS J. SWIRSKY, JULIAN P. KIRK, JOHN MASLOWSKI, MARC B. MAZUR, KELVIN D. MOORE, MARCUS E. SMITH, and CHRISTINE ST. CLARE, | ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

## <u>COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934</u>

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## <u>NATURE OF THE ACTION</u>

1.      This action stems from a proposed transaction announced on September 12, 2019 (the "Proposed Transaction"), pursuant to which Fibrocell Science, Inc. ("Fibrocell" or the "Company") will be acquired by Castle Creek Pharmaceutical Holdings, Inc. ("Parent") and Castle Creek Merger Corp. ("Merger Sub," and together with Parent, "Castle Creek").

2.      On September 12, 2019, Fibrocell's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Castle Creek.  Pursuant to the terms of the Merger Agreement, Fibrocell's stockholders will receive $3.00 in cash for each share of Fibrocell common stock they own.

3.      On October 11, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.   Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Fibrocell common stock.

9.      Defendant Fibrocell is a Delaware corporation and maintains its principal executive offices at 405 Eagleview Boulevard, Exton, Pennsylvania 19341.  Fibrocell's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "FCSC."

10.     Defendant Douglas J. Swirsky is Chairman of the Board of the Company.

11.     Defendant Julian P. Kirk is a director of the Company.

12.     Defendant John Maslowski is President, Chief Executive Officer, and a director of the Company.

13.     Defendant Marc B. Mazur is a director of the Company.

14.     Defendant Kelvin D. Moore is a director of the Company.

15.     Defendant Marcus E. Smith is a director of the Company.

16.     Defendant Christine St. Clare is a director of the Company.

17.     The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

### CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Fibrocell (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19.     This action is properly maintainable as a class action.

20.     The Class is so numerous that joinder of all members is impracticable.  As of September 9, 2019, there were approximately 9,758,332 shares of Fibrocell common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

25.     Fibrocell is a cell and gene therapy company focused on improving the lives of people with rare diseases of the skin and connective tissue.

26.     The Company is utilizing its proprietary autologous fibroblast technology to develop personalized biologics that target the underlying cause of disease.

27.     The Company's pipeline of localized gene therapy candidates include FCX-007 for the treatment of RDEB, a life-threatening genetic disorder diagnosed in infancy with no cure or treatment approved by the United States Food and Drug Administration ("FDA").  A pivotal Phase 3 clinical trial for FCX-007 was initiated in late July 2019.

28.     FCX-007 is a genetically-modified autologous fibroblast that encodes the gene for COL7.  By genetically modifying autologous fibroblasts *ex vivo* to produce COL7, culturing them and then treating wounds locally via injection, FCX-007 offers the potential to address the underlying cause of the disease by providing high levels of COL7 directly to the affected areas while avoiding systemic distribution.  FCX-007 has been granted Orphan Drug designation, Rare Pediatric Disease designation, Fast Track designation, and Regenerative Medicine Advanced Therapy designation by the FDA.

29.     The Company is also developing FCX-013 for the treatment of moderate to severe localized scleroderma and is currently enrolling the Phase 1 portion of a Phase ½ clinical trial.

30.     FCX-013 is Fibrocell's investigational stage gene therapy candidate for the treatment of moderate to severe localized scleroderma. FCX-013 is an autologous fibroblast genetically modified using lentivirus and encoded for matrix metalloproteinase 1 ("MMP-1"), a protein responsible for breaking down collagen.  FCX-013 incorporates Intrexon Corporation's proprietary RheoSwitch Therapeutic System®, a biologic switch activated by veledimex—an orally administered compound—to control protein expression at the site of the localized scleroderma lesions.  FCX-013 is designed to be injected under the skin at the location of the fibrotic lesions where the genetically-modified fibroblast cells will produce MMP-1 to potentially break down excess collagen accumulation.  The FDA has granted Orphan Drug designation, Rare Pediatric Disease designation, and Fast Track designation to FCX-013.

31.     On September 12, 2019, Fibrocell's Board caused the Company to enter into the Merger Agreement with Castle Creek.

32.     Pursuant to the terms of the Merger Agreement, Fibrocell's stockholders will receive $3.00 in cash for each share of Fibrocell common stock they own.

33.     According to the press release announcing the Proposed Transaction:

Fibrocell Science, Inc. (Nasdaq: FCSC), a cell and gene therapy company focused on transformational autologous cell-based therapies for skin and connective tissue diseases, today announced it has reached an agreement to be acquired by Castle Creek Pharmaceutical Holdings, Inc. ("Castle Creek Pharmaceutical Holdings"), the parent company of Castle Creek Pharmaceuticals, LLC "Castle Creek Pharmaceuticals").

Castle Creek Pharmaceutical Holdings will acquire Fibrocell for a total consideration of approximately $63.3 million, including repayment of debt and other financial instruments, in cash. Fibrocell common stockholders will receive all-cash consideration of $3.00 per share. This offer represents a 63% premium to Fibrocell's 30-day volume weighted average price as of September 11, 2019. The transaction was approved by the Boards of Directors of both companies and is expected to close in the fourth quarter of 2019. . . .

Under the terms of the agreement and plan of merger, Castle Creek Pharmaceutical Holdings will purchase all outstanding shares of Fibrocell common stock for $3.00 per share and provide repayment of outstanding debt, preferred shares and warrants as defined by their individual agreements.

The closing of the acquisition is subject to customary closing conditions, including Fibrocell stockholder approval. Upon completion of the transaction, Fibrocell will become a privately held subsidiary of Castle Creek Pharmaceutical Holdings.

Fibrocell's employees will continue as employees of the combined company on completion of the transaction. Until that time, Fibrocell will continue to operate as a separate and independent company.

Castle Creek Pharmaceutical Holdings legal counsel for the transaction is Latham & Watkins LLP. Canaccord Genuity is acting as Fibrocell's exclusive financial advisor, while Hogan Lovells US LLP is acting as its legal counsel.

### The Proxy Statement Omits Material Information, Rendering It False and Misleading

34.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

35.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

36.     First, the Proxy Statement omits material information regarding the Company's financial projections.

37.     The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate EBITDA and EBIT; (ii) projected free cash flows and all underlying line items; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

38.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

39.     Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Canaccord Genuity ("Canaccord").

40.     With respect to Canaccord's Selected Public Companies Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Canaccord in the analysis.

41.     With respect to Canaccord's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Canaccord in the analysis.

42.     With respect to Canaccord's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the unlevered free cash flows for FCX-007 and FCX-013 for calendar years 2019 through 2028 and all underlying line items; (ii) the probability of occurrence assumptions provided by Fibrocell management; (iii) the terminal values; (iv) the individual inputs and assumptions underlying the discount rates ranging from 25.6% to 27.6% and the terminal perpetual

growth rates ranging from 0% to 2.0%; and (v) the fully-diluted shares of Fibrocell common stock.

43.     With respect to Canaccord's premiums paid analysis, the Proxy Statement fails to disclose: (i) the transactions observed by Canaccord in the analysis; and (ii) the premiums paid in the analysis.

44.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

45.     Third, the Proxy Statement fails to disclose whether any parties are currently subject to "don't ask, don't waive" provisions in nondisclosure agreements that are preventing the parties from requesting waivers of standstill provisions to submit offers to acquire the Company.

46.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wish to come forward with a superior offer, they are permitted to do so, when in fact they are contractually prohibited from doing so.

47.     Fourth, the Proxy Statement fails to disclose the nature of Canaccord's communications with the "five potential strategic partners identified by the Special Committee" regarding "their potential interest in acquiring the Company."

48.     The Company's stockholders are entitled to an accurate description of the process leading up to the execution of the Merger Agreement.

49.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Fibrocell Board; (iii) Reasons for the Merger; (iv) Opinion of Fibrocell's Financial Advisor; and (v) Certain Unaudited Prospective Financial Information.

50.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Fibrocell**

51.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Fibrocell is liable as the issuer of these statements.

53.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

54.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

56.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

57.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

58.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

59.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of Fibrocell within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Fibrocell and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

61.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved

in the making of the Proxy Statement.

63.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 23, 2019

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
     Brian D. Long (#4347)

**OF COUNSEL:**
     Gina M. Serra (#5387)
     300 Delaware Avenue, Suite 1220

**RM LAW, P.C.**
     Wilmington, DE 19801
Richard A. Maniskas
     Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300
     Facsimile: (302) 654-7530
Berwyn, PA 19312
     Email: bdl@rl-legal.com
Telephone: (484) 324-6800
     Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com

     *Attorneys for Plaintiff*